UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                          Case No. 07-CR-410

vs.                                     HON.HARRY D. LEINENWEBER

GREGORY HARRIS D-21,

       Defendant.
_____/

**DEFENDANT HARRIS' MOTION TO SUPPRESS EVIDENCE SEIZED FROM A WARRANTLESS STOP AND ILLEGAL SERCH AND SEIZURE OF HIS CHRYSLER PACIFICA ON MARCH 12, 2007, AND REQUEST FOR AN EVIDENTIARY HEARING**

NOW COMES the Defendant, GREGORY HARRIS, by and through his attorney, ANTHONY T. CHAMBERS, and moves this Honorable Court to conduct an Evidentiary Hearing regarding the warrantless stop and illegal search and seizure of the Defendant and his Chrysler Pacifica. Following said hearing, Defendant requests this Honorable Court issue an Order Suppressing all evidence illegally obtained. Defendant files a supporting Brief and further states as follows:

1. That Defendant HARRIS is charged with various counts including Conspiracy to Distribute 5 Kilograms or more of Cocaine, in violation of 21 U.S.C. § 846, 841 (a)(1) and Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises, in violation of 18 U.S.C. § 1952.

2. That on March 12, 2007, at approximately 2:30 p.m., DEA agents established surveillance on 11543 South Carpenter Street, Chicago, Illinois.

3. That the above address is the residence of Lois Buffington, a named co-defendant.

4. That at approximately 6:25 p.m. agents observed a light blue Chrysler Pacifica ("Pacifica") arrives at the above residence.

5. That agents observed two unknown black males, identified in the June 27, 2007 criminal complaint as Individuals C and D, exit the Pacifica and walk to the south side of the residence and out of view.

6. That at approximately 6:36 p.m. agents observed Individuals C and D depart the area in the Pacifica.

7. That Individuals C and D drove to a gas station located on the southeast corner of 115th Street and Halsted.

8. That a Chrysler Voyager ("Voyager") was at the gas pump adjacent to the Pacifica.

9. That both vehicles pulled into the McDonalds located at 600 East 115th Street.

10. That after a period of time, both vehicles exited the McDonalds and headed eastbound on Interstate I-94.

11. That at approximately 7:40 p.m., TFO Travino conducted a traffic stop on the Pacifica on 80/94 near Burns Harbor.

12. That Defendant HARRIS was the passenger in the Pacifica and Defendant Inkton was the driver.

13. That Defendant HARRIS was in possession of proper registration and insurance papers.

14. That Defendant HARRIS and co-defendant Inkton had valid driver's license.

15. That law enforcement officers lacked reasonable suspicion to effectuate a traffic stop on the Pacifica.

16. That the law enforcement officers lacked probable cause to effectuate the search and seizure of the Pacifica.

17. That the law enforcement officers should have sought the consent of Defendant HARRIS to search the Pacifica.

18. That the search and seizure of the Pacifica was in violation of Defendant HARRIS' Fourth Amendment Rights.

19. That the search and seizure of the Defendant HARRIS was in violation of the Fourth Amendment.

20. That the initial stop of the Defendant and the arrest was in violation of the Fourth Amendment of the U.S. Constitution.

21. That Defendant HARRIS requests that the prosecution present all witnesses who were present during the surveillance, stop, arrest, and detention of the vehicles and the Defendant.

22. That Defendant HARRIS further requests the presence of all witnesses from whom law enforcement received information upon which any reliance was placed. This request includes law enforcement personnel and civilians which they are aware.

23. That it is incumbent of the prosecution to present these witnesses.

WHEREFORE, Defendant GREGORY HARRIS respectfully requests that this Honorable Court conduct an evidentiary hearing and thereafter issue an Order Suppressing all evidence illegally obtained.

Respectfully Submitted,

s/ Anthony T. Chambers
Anthony T. Chambers (P38177)
220 W. Congress, Fifth Floor
Detroit, Michigan 48226
(313) 964-5557
(313) 964-4801 Fax
achambers3650@yahoo.com

January 30, 2008

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                                    Case No. 07-CR-410

vs.                                        HON.HARRY D. LEINENWEBER

GREGORY HARRIS D-21,

    Defendant.
_____/

**BRIEF IN SUPPORT OF DEFENDANT HARRIS' MOTION TO SUPPRESS EVIDENCE SEIZED FROM A WARRANTLESS STOP AND ILLEGAL SEARCH AND SEIZURE OF HIS CHRYSLER PACIFICA ON MARCH 12, 2007, AND REQUESTS AN EVIDENTIARY HEARING**

**I.  Statement of Facts**[1]

On March 12, 2007, DEA agents initiated surveillance at 11543 South Carpenter Street, Chicago, Illinois. This address is the residence of Lois Buffington, a co-defendant and mother of Calvin Buffington, the leader of the "Buffington Drug Trafficking Organization." At approximately 6:15 p.m., agents observed Calvin Buffington on the front porch of the residence. At approximately 6:25 p.m., agents observed a light blue Chrysler Pacifica ("Pacifica") park in front of the residence. Agents observed two unknown black males, identified in the June 27, 2007 criminal complaint as Individuals C and D, exit the Pacifica. These individuals were later determined to be Defendant HARRIS and co-defendant Inkton ("Inkton") respectively. Defendant HARRIS was

---

[1] The facts described in this motion and brief were taken from either police reports, DEA reports, or the complaint. Defendant does not concede to the accuracy of any of these documents.

observed carrying a white shopping style bag. The two walked to the south side of the house and then walked along the side of the home out of the view of agents. At approximately 6:35 p.m., agents observed the two depart the area in the Pacifica. Neither subject was carrying any items when they left the residence. The agents did not observe any illegal behavior.

Agents followed the Pacifica to a gas station located on the southeast corner of 115th Street and Halsted, just a few blocks from the Carpenter Street residence. The Pacifica pulled up to a gas pump and proceeded to get gas. A green Chrysler Voyager ("Voyager") was observed at the gas pump adjacent to the Pacifica. Agents observed the driver of the Voyager, co-defendant Smith ("Smith"), meet with Defendants HARRIS and Inkton. After filling up their tanks, both vehicles departed the gas station and drove east on 115th Street.

At approximately 6:45 p.m., both vehicles pulled into the McDonalds located at 600 East 115th Street. Agents observed Smith exit the Voyager and enter the McDonalds. The Pacifica was observed parking in the lot but agents lost sight of the vehicle and its' occupants in order to maintain surveillance on the Voyager.

At approximately 6:50 p.m., agents observed Smith exit the McDonalds, enter the Voyager, and leave the area with the Pacifica behind it. The two vehicles then headed eastbound on Interstate I-94. The vehicles eventually traveled eastbound on Interstate 94/80 into Indiana.

At approximately 7:35 p.m., TFO Trevino conducted a traffic stop on the Pacifica on 80/94 near Burns Harbor. The driver was identified as Marvin Inkton and the front seat passenger identified himself as Defendant HARRIS. Both subjects were instructed to

produce credentials. The Pacifica was legally registered to Defendant HARRIS and Inkton was a valid driver. Both subjects were placed in the back seat of a squad car where they were left alone for a period of time. During this period, the Pacifica was searched by law enforcement. The search revealed no illegal activity. However, after the search, both parties were arrested and transported to the Lake Station Police Department for questioning.

## II. The Initial Stop And Detention Of Defendant HARRIS was Unconstitutional

Defendant HARRIS was deprived of his constitutional rights against unreasonable searches and seizures when law enforcement officers, without reasonable suspicion, effectuated a traffic stop and arrested Defendant HARRIS without probable cause.

The Fourth Amendment of the United States Constitution, and Sec I, Art 11, Mich. Const 1963, provides that searches and seizures of individuals shall occur based upon warrants and probable cause. In Terry v. Ohio, 392 U.S. 1; 88 S.Ct. 1868 (1968), the Supreme Court held that a police officer could "stop and frisk" a suspicious person if the police officer could "point to specific articulable facts, which taken together with rational inferences from these facts, reasonably warrant that intrusion". 392 U.S. at 21. It is the specific information that is required to justify the limited intrusion authorized by Terry.

Although a Terry stop based on sufficient articulable suspicion is permissible it can become an unreasonable search. Id. at 20. The Court has adopted a dual inquiry for evaluating the reasonableness of an investigative stop. The inquiry is: whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Id. at 20. See

also United States v. Sharpe, 105 S.Ct. 1568, 1573 (1985).

In accessing whether a Terry stop has become unreasonable it is necessary "…to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." Sharpe at 1575 citing Michigan v. Summers, 452 U.S. 692, 701 (1981).

In Delaware v Prouse, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979), a patrolman in a police cruiser stopped an automobile occupied by respondent. As he was walking toward the vehicle, the officer smelled marihuana. He subsequently seized the marihuana in plain view on the car floor and the respondent was indicted for illegal possession of a controlled substance. The patrolman testified that prior to stopping the vehicle he had observed neither traffic or equipment violations nor any suspicious activity, and that he made the stop only in order to check the driver's license and registration. The patrolman characterized the stop as "routine," the patrolman explained, "I saw the car in the area and wasn't answering any complaints, so I decided to pull them off."  The Court held that:

> except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

Id.

In Whren v Brown, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996), plainclothes vice-squad officers were patrolling a "high drug area" of the city in an unmarked car. They became suspicious when the driver of a vehicle with temporary

license plates waiting at a stop sign looked down into the lap of the passenger. After sitting more than 20 seconds at the stop sign, the police car made a U-turn to check out the vehicle. The vehicle turned right without signaling and began to speed. Eventually officers stopped the vehicle and identified themselves as officers. Within plain view an officer observed two large plastic bags of what appeared to be crack cocaine in Whren's hand. The subjects were arrested, and quantities of several types of illegal drugs were retrieved from the vehicle. Whren challenged the stop stating that the officers were using a traffic stop to investigate other potential criminal activity to which they had no probable cause or reasonable suspicion to believe existed. The Court distinguished Whren from Prouse by stating:

> Our opinion in Prouse expressly distinguished the case from a stop based on precisely what is at issue here: "probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations." Delaware v Prouse, 440 U.S. 648, 661. It noted approvingly that "the foremost method of enforcing traffic and vehicle safety regulations . . . is acting upon observed violations," id. at 659, which afford the "'quantum of individualized suspicion'" necessary to ensure that police discretion is sufficiently constrained, id. at 654-655 (quoting United States v Martinez-Fuerte, 428 U.S. at 560). What is true of Prouse is also true of other cases that engaged in detailed "balancing" to decide the constitutionality of automobile stops, such as Martinez-Fuerte, which upheld checkpoint stops, see 428 U.S. at 556-562, and Brignoni-Ponce, which disallowed so-called "roving patrol" stops, see 422 U.S. at 882-884: The detailed "balancing" analysis was necessary because they involved seizures without probable cause. Here the District Court found that the officers had probable cause to believe that petitioners had violated the traffic code. That rendered the stop reasonable under the Fourth Amendment, the evidence thereby discovered admissible, and the upholding of the convictions by the Court of Appeals for the District of Columbia Circuit correct. The judgment

Whren v. Brown, 517 U.S. 806 (1996).

In this case, Gary police officers conducted an illegal traffic stop on Defendant HARRIS' Chrysler Pacifica. There was no evidence offered to suggest that any traffic violation had been committed. Moreover, there was probable cause that any illegal activity had taken place at the South Carpenter Street address. Rather, officers were radioed by agents to detain the Pacifica. As such, officers conducted an illegal traffic stop in order to comply with the agents' request.

The driver, defendant Inkton was not cited for any moving violation and he possessed a valid driver's license. In addition, Defendant HARRIS' paperwork in reference to his vehicle was accurate and correct. As such, the officers lacked sufficient articulable suspicion that Defendant HARRIS had committed or was about to commit a crime. <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).

Where the initial stop, search, and seizure of Defendant are unconstitutional, the evidence which is obtained through exploitation of illegality is inadmissible. <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963). As such, any evidence seized during this illegal traffic stop should be suppressed.

WHEREBY the Defendant respectfully requests this Court to order a hearing to determine facts and validity of the traffic stop.

Respectfully Submitted,

<u>s/ Anthony T. Chambers</u>
Anthony T. Chambers (P38177)
220 W. Congress, Fifth Floor
Detroit, Michigan 48226
(313) 964-5557
(313) 964-4801 Fax
achambers3650@yahoo.com

## CERTIFICATION

     I hereby certify that the forgoing papers were faxed this date, and by hand delivery to the following:

**Terra Brown**
United States Attorney's Office (NDIL)
219 South Dearborn Street
Suite 500
Chicago, IL 60604
(312) 353-5300
Email: terra.brown@usdoj.gov

Date: February 12, 2008          By: s/ Shantel Stoudemire, Paralegal to Attorney Chambers