UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

Case No. 07-CR-410

vs.

HON. HARRY D. LEINENWEBER

GREGORY HARRIS D-21,

    Defendant.

_____/

**DEFENDANT HARRIS' MOTION TO SUPPRESS EVIDENCE SEIZED FROM A WARRANTLESS STOP AND ILLEGAL SEARCH AND SEIZURE OF HIS CHRYSLER VOYAGER ON MARCH 12, 2007, AND REQUEST FOR AN EVIDENTIARY HEARING**

NOW COMES the Defendant, GREGORY HARRIS, by and through his attorney, ANTHONY T. CHAMBERS, moves this Honorable Court to conduct an Evidentiary Hearing regarding the warrantless stop and illegal search and seizure of the Defendant's Chrysler Voyager. Following said hearing, Defendant requests this Honorable Court issue an Order Suppressing all evidence illegally obtained. Defendant files a supporting Brief and further states as follows:

1. That Defendant HARRIS is charged with various counts including Conspiracy to Distribute 5 Kilograms or more of Cocaine, in violation of 21 U.S.C. § 846, 841 (a)(1) and Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises, in violation of 18 U.S.C. § 1952.

2. That on March 12, 2007, Defendant HARRIS allowed Defendant Smith to drive Defendant HARRIS' Chrysler Voyager mini-van (hereinafter "Voyager").

3. That DEA Enforcement Group 31 instructed Officer Jeff Hornyak of the Gary Police Department to conduct a traffic stop on the Voyager on Interstate I-94/80 eastbound at approximately the Burr Street exit in Gary, Indiana, Lake County.

4. That at the time the traffic stop was effectuated; agents knew that Defendant HARRIS was the owner of the Voyager and that he was in near proximity to the Voyager.

5. That the law enforcement officers lacked probable cause to effectuate the search and seizure of the Voyager.

6. That Defendant Smith did not have standing to consent to the search of Voyager

7. That Defendant Smith did not consent to the search of the Voyager.

8. That the law enforcement officers should have sought the consent of Defendant HARRIS to search the Voyager.

9. That the search and seizure of the Voyager was in violation of Defendant HARRIS' Fourth Amendment Rights.

10. That Defendant HARRIS requests that the prosecution present all witnesses who were present during the surveillance, stop, arrest, and detention of the Voyager.

11. That Defendant HARRIS further requests the presence of all witnesses from whom law enforcement received information upon which any reliance was placed. This request includes law enforcement personnel and civilians which they are aware.

12. That it is incumbent of the prosecution to present these witnesses.

WHEREFORE, Defendant GREGORY HARRIS respectfully requests that this Honorable Court conduct an evidentiary hearing and thereafter issue an Order Suppressing all evidence illegally obtained.

        Respectfully Submitted,

        s/ Anthony T. Chambers
        Anthony T. Chambers (P38177)
        220 W. Congress, Fifth Floor
        Detroit, Michigan 48226
        (313) 964-5557
        (313) 964-4801 Fax
        achambers3650@yahoo.com

January 30, 2008

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                  Case No. 07-CR-410

vs.                                       HON.HARRY D. LEINENWEBER

GREGORY HARRIS D-21,

       Defendant.
_____/

**BRIEF IN SUPPORT OF DEFENDANT HARRIS' MOTION TO SUPPRESS EVIDENCE SEIZED FROM A WARRANTLESS TRAFFIC STOP AND AN ILLEGAL SEARCH AND SEIZURE OF HIS CHRYSLER VOYAGER ON MARCH 12, 2007, AND REQUESTS AN EVIDENTIARY HEARING**

**I. Statement of Facts[1]**

On March 12, 2007, DEA agents initiated surveillance at 11543 South Carpenter Street, Chicago, Illinois. This address is the residence of Lois Buffington, a co-defendant and mother of Calvin Buffington, the leader of the "Buffington Drug Trafficking Organization." At approximately 6:15 p.m., agents observed Calvin Buffington on the front porch of the residence. At approximately 6:25 p.m., agents observed a light blue Chrysler Pacifica ("Pacifica") park in front of the residence. Agents observed two unknown black males, identified in the June 27, 2007 criminal complaint as Individuals C and D, exit the Pacifica. These individuals were later determined to be Defendant HARRIS and co-defendant Inkton ("Inkton") respectively. Defendant HARRIS was

---

[1] The facts described in this motion and brief were taken from either police reports, DEA reports, or the complaint. Defendant does not concede to the accuracy of any of these documents.

observed carrying a white shopping style bag. The two walked to the south side of the house and then walked along the side of the home out of the view of agents. At approximately 6:35 p.m., agents observed the two depart the area in the Pacifica. Neither subject was carrying any items when they left the residence. The agents did not observe any illegal behavior.

Agents followed the Pacifica to a gas station located on the southeast corner of 115th Street and Halsted, just a few blocks from the Carpenter Street residence. The Pacifica pulled up to a gas pump and proceeded to get gas. A green Chrysler Voyager ("Voyager") was observed at the gas pump adjacent to the Pacifica. Agents observed the driver of the Voyager, co-defendant Smith ("Smith"), meet with Defendants HARRIS and Inkton. After filling up their tanks, both vehicles departed the gas station and drove east on 115th Street. Again, agents observed no illegal activity.

At approximately 6:45 p.m., both vehicles pulled into the McDonalds located at 600 East 115th Street. Agents observed Smith exit the Voyager and enter the McDonalds. The Pacifica was observed parking in the lot but agents lost sight of the vehicle and its' occupants in order to maintain surveillance on the Voyager. Again, agents observed no illegal activity.

At approximately 6:50 p.m., agents observed Smith exit the McDonalds, enter the Voyager, and leave the area with the Pacifica behind it. The two vehicles then headed eastbound on Interstate I-94. The vehicles eventually traveled eastbound on Interstate 94/80 into Indiana.

At approximately 7:24 p.m., Officer Jeff Hornyak of the Gary Police observed the Voyager traveling on Interstate I-94/80 in excess of the posted speed limit. The driver

was identified as Michael Smith. The defendant provided the officer with a valid license, registration and proof of insurance. He told the officer that he had been in the Chicago area visiting family. The officer left the subject in the Voyager for a period of time while he returned to his squad car.

After a period of time, the officer returned and instructed the defendant to exit the Voyager so that the defendant could be searched. The search yielded nothing illegal; however, the officer instructed the defendant to remain in the Voyager while the officer returned to his squad car. After another period of time, the defendant approached the officer and asked what was happening. The officer told the defendant that he was issuing a ticket for speeding. The defendant was given his ticket and his paperwork was returned to him; however, the officer instructed him to return to the Voyager and wait.

After another lengthy delay, the officer approached the Voyager and asked Defendant Smith for permission to search the Voyager. Defendant Smith refused consent and the officer placed Defendant Smith in the back of the squad car. After some time period, a drug sniffing dog arrived on the scene and a search of the Voyager yielded the illegal contraband that is the subject of this brief.

## II. The Evidence Seized From The Voyager Should Be Suppressed Because Officers Lacked Probable Cause To Search The Voyager

The evidence seized from the Voyager should be suppressed because law enforcement lacked probable cause to search vehicle and Defendant HARRIS did not give his consent. In United States v. Robinson, 414 U.S. 218, 38 L.Ed. 2d 427, 94 S.Ct. 467 (1973), the Court noted the two historical rationales for the "search incident to arrest" exception: (1) the need to disarm the suspect in order to take him into custody, and (2) the

need to preserve evidence for later use at trial. Id. at 234. Neither of these rationales applies to the instant case.

In Knowles v. Iowa, 525 U.S. 113, 119 S. Ct. 484, 142 L. Ed. 2d 492 (1998), an officer stopped the defendant for speeding. However, rather than arresting the defendant, the officer issued him a citation for the infraction. Subsequent to issuing the ticket, the officer conducted a full search of the defendant's vehicle. Consequently, drugs were found and the defendant was arrested. The defendant had not consented to the search and sought to suppress the evidence. The Supreme Court held that the search was unconstitutional.

In reference to the first rationale articulated in Robinson, the Supreme Court in Knowles held that the threat to officer safety from issuing a traffic citation is a good deal less than in the case of a custodial arrest. While the concern for officer safety in this context may justify the "minimal" additional intrusion of ordering a driver and passengers out of the car, it does not by itself justify the often considerably greater intrusion attending a full field-type search. See also Cupp v. Murphy, 412 U.S. 291, 296, 36 L.Ed. 2d 900, 93 S.Ct. 2000 (1973) ("Where there is no formal arrest . . . a person might well be less hostile to the police and less likely to take conspicuous, immediate steps to destroy incriminating evidence").

In reference to the second rationale, the need to preserve evidence, the Supreme Court in Knowles held that once Knowles was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained. No further evidence of excessive speed was going to be found either on the person or in the passenger compartment of the car.

In this case, Officer Hornyak stopped Defendant Smith and issued a citation for speeding. Defendant Smith's license and registration were also returned to him; however, the officer refused to release the defendant. Instead, without probable cause, a drug sniffing dog was called onto the scene and illegal contraband was ultimately discovered. There was no officer safety threat and no probable cause to believe that there was evidence that needed to be preserved. As such, the search was illegal and all evidence seized should be suppressed.

### III. The Evidence Seized In The Search Of The Voyager Should Be Suppressed Because Defendant HARRIS Did Not Consent To The Search

Defendant HARRIS did not consent to the search of his Voyager; as such, the evidenced seized should be suppressed. A person is seized by the police and entitled to challenge the government's actions under the Fourth Amendment when the officer, "by means of physical force or show of authority," terminates or restrains his freedom of movement. Florida v Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed. 2d 389 (1991) (quoting Terry v. Ohio, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968)). In Jones v. United States, 362 U.S. 257 (1960), the concept of standing focused on whether the person seeking to challenge the legality of a search as a basis for suppressing evidence was himself the "victim" of the search or seizure. Id. at 261.

In this case, Defendant HARRIS was being detained by Gary police officers in his Pacifica at the same time Gary officers were conducting a traffic stop on Defendant Smith, the driver of Defendant HARRIS' Voyager. The officers knew that Defendant HARRIS was the owner of the Voyager and they knew that he was being detained by other officers within close proximity. The officer issued the driver of Voyager a speeding ticket and returned the registration and proof of insurance papers back to the driver. At

this point, the traffic stop had concluded and the officer had no probable cause to detain the Voyager. Instead of allowing the Voyager to continue on its journey, however, the officer continued to detain the Voyager while a drug sniffing dog was called to the scene.

The officer sought consent to search the Voyager from the driver, Defendant Smith, but he refused. Consent to search the Voyager was never obtained from Defendant HARRIS, who was being unlawfully detained up ahead.  The officers knew that Defendant HARRIS was the proper owner of the vehicle.

When the Government seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving that the consent was, in fact, freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 548 (1968). Moreover, the "inquiry does not end with a determination that [the] consent was voluntary, for if the agents had improperly 'seized' the defendants, [their] consent to a search would have been tainted and the evidence should have been suppressed." United States v. Morgan, 725 F.2d 56, 58 (7th Cir. 1984).Where the initial stop, search, and seizure of Defendant are unconstitutional; the evidence which is obtained through exploitation of illegality is inadmissible. Wong Sun v. United States, 371 U.S. 471 (1963).   It is the Defendant's contention that the Government will be unable to meet this burden in the instant case.

WHEREFORE, Defendant HARRIS respectfully requests this Honorable Court to conduct an evidentiary hearing and thereafter issue an Order Suppressing all evidence illegally obtained.

                    Respectfully Submitted,

                    s/ Anthony T. Chambers
                    Anthony T. Chambers (P38177)
                    220 W. Congress, Fifth Floor
                    Detroit, Michigan 48226
                    (313) 964-5557
                    (313) 964-4801 Fax
                    achambers3650@yahoo.com

January 30, 2008

## **CERTIFICATION**

     I hereby certify that the forgoing papers were faxed this date, and by hand delivery to the following:

**Terra Brown**
United States Attorney's Office (NDIL)
219 South Dearborn Street
Suite 500
Chicago, IL 60604
(312) 353-5300
Email: terra.brown@usdoj.gov

Date: February 12, 2008          By: s/ Shantel Stoudemire, Paralegal to Attorney Chambers