**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>                **Plaintiff,**<br><br>      **v.**<br><br>**MICHAEL SMITH and GREGORY HARRIS,**<br><br>                **Defendants.** | **Case No. 07 CR 410-17<br>          07 CR 410-21**<br><br>**Hon. Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

On December 13, 2007, Defendants Gregory Harris ("Harris") and Michael Smith ("Smith") were charged with drug trafficking offenses relating to their alleged involvement in a drug trafficking organization that operated between Chicago, Illinois, and Detroit, Michigan. Now before the Court are Defendants' Motions to Suppress Evidence seized after two warrantless traffic stops on March 12, 2007, requests for an evidentiary hearing, and supplemental briefs. The Government argues that the Court should deny Defendants' motions to suppress without a hearing. For the reasons stated herein, the Court **denies** both the motions to suppress and the requests for a hearing.

### I. BACKGROUND

#### A. Factual Background

In early 2007, based on information that cocaine would be transported from Chicago to Detroit, undercover law enforcement

agents began conducting surveillance at the home of Lois Buffington ("Buffington") in Chicago. On March 12, 2007, at approximately 6:25 p.m., agents observed a blue 2007 Chrysler Pacifica with Michigan plates ("the Pacifica"), which was registered to Harris, arrive and park in front of the Buffington residence. Marvin Inkton ("Inkton") and Harris, who was carrying a white shopping bag, exited the Pacifica and walked to the rear of the residence. About ten minutes later, Harris and Inkton walked empty-handed from the residence to the Pacifica and drove away. Agents followed the Pacifica to a gas station a few blocks away. Shortly thereafter, agents observed a green 2007 Chrysler Voyager with Michigan plates ("the Voyager"), which was also registered to Harris, enter the gas station. Agents observed Harris and Inkton meet with Smith and then depart the area in the vehicles. Surveillance agents followed the Pacifica and the Voyager, which were traveling in tandem, to a McDonald's and then to I-94/I-80 as the two vehicles traveled eastbound into Indiana. While conducting this surveillance, the agents obtained the assistance of Gary Police Department Officer Jeff Hornyak ("Officer Hornyak"). The agents informed Officer Hornyak that they believed the vehicles were transporting narcotics.

### 1. *Traffic Stop of the Voyager*

Officer Hornyak observed the Pacifica and the Voyager traveling in tandem in excess of the posted speed limit. As a

result, he initiated a traffic stop of the Voyager at approximately 7:22 p.m. *See* Gary Police Dept. Dispatch Rep. Officer Hornyak obtained the Voyager's registration and a Michigan driver's license from Smith, who had been driving the vehicle. Based on his training, experience, and interactions with Smith, Officer Hornyak believed that Smith was nervous during their conversation and was providing deceptive answers to his questions about the purposes for visiting Chicago and length of his stay. Officer Hornyak returned to his patrol car to issue a citation for speeding. Because he believed that Smith was being dishonest and based on his knowledge regarding the surveillance, at 7:35 p.m., Officer Hornyak called Lake Station Police Department Officer Ronald Potrebic ("Officer Potrebic") to come to the scene with his narcotic's detection canine. *See* Lake Station Police Dept. Incident Rep.; Lake Station Police Dept. Dispatch Rep.

Officer Hornyak then advised Smith of the contents of the citation for speeding. During this conversation, Officer Hornyak determined that Smith appeared to be more nervous than at the beginning of the traffic stop. Officer Hornyak told Smith that he was working drug interdiction and asked him if he had any weapons or narcotics in the Voyager, to which Smith responded "I don't have anything on me." When Officer Hornyak asked for consent to search the Voyager, Smith initially verbally consented but withdrew his consent when given a consent form.

At 7:44 p.m., Officer Potrebic arrived at the scene of the traffic stop with his canine. *See id.* When directed around the outside of the Voyager, the canine gave positive alerts to the presence of the odor of a controlled substance coming from the rear passenger area. Based on these alerts, the canine was deployed inside the Voyager where it alerted again to the rear passenger area. Upon visual inspection, Officer Hornyak discovered a white brick-like object, which he recognized as a kilogram of cocaine. At this time, Officer Hornyak placed Smith in wrist restraints. Law enforcement later recovered a total of 5.82 kilograms of cocaine from the Voyager, two cellular telephones from Smith, and a cellular telephone from inside the Voyager.

### 2. *Traffic Stop of the Pacifica*

At approximately 7:35 p.m., Drug Enforcement Agency Task Force Agent Jeffrey Trevino ("Agent Trevino") conducted a traffic stop of the Pacifica on I-65 eastbound for speeding. When this stop was made, Inkton was driving the Pacifica, and Harris was in the passenger's seat. After this stop, Ogden Dunes Police Officer Wayne Dugan ("Officer Dugan") was called to assist Agent Trevino. According to Officer Dugan's sworn testimony and the Ogden Dunes records, Officer Dugan was dispatched at 7:43 p.m. and arrived on the scene of the stop at 7:48 p.m. *See* Dugan Aff. ¶ 2; Ogden Dunes Police Dept. Dispatch Rep.

For safety reasons, Officer Dugan placed both Inkton and Harris in the back seat of his patrol car while Agent Trevino conducted his investigation. Dugan Aff. ¶¶ 6-7. According to his affidavit, after putting both men in the back seat, Officer Dugan activated his in-car dash mounted video recorder ("the video camera") and turned it around to face the subjects. *Id.* at ¶ 8. During the traffic stop, this video camera contained a time stamp that did not reflect the accurate time. The time stamp recorded that the traffic stop had already begun as of 7:05 p.m. Officer Dugan testified that both he and the Ogden Dunes Chief of Police knew that the time stamp was incorrect during the traffic stop on March 12, 2007. *Id.* at ¶¶ 10-13.

During the traffic stop of the Pacifica, Agent Trevino learned from Officer Hornyak that packages of cocaine were discovered in the Voyager. Based on this discovery, information from the surveillance, and statements from Inkton and Harris that the officers determined to be inconsistent, Agent Trevino detained both Inkton and Harris and recovered six cellular telephones from the Pacifica.

**B. Procedural History**

On January 2, 2008, Smith filed a motion to suppress evidence seized from the Pacifica. On February 12, 2008, Harris moved to suppress evidence seized from both the Pacifica and the Voyager. On April 11, 2008, the Court granted Defendants' requests for an

evidentiary hearing, which was scheduled for December 18, 2008. This hearing was continued upon Defendants' request after the Government produced information that the time stamp on the video camera in Officer Dugan's patrol car was inaccurate. Defendants informed the Court that they intended to dispute the Government's time line related to the traffic stops. The Court granted leave for Defendants to conduct an investigation and instructed Defendants to file affidavits of individuals with first-hand knowledge and supplemental briefs regarding any remaining contested issues of fact that necessitated a suppression hearing.

On February 25, 2009, Harris filed a supplemental brief, which was joined by Smith, and the affidavit of a criminal investigator, William Rice ("Rice"). Rice was not present at the traffic stops in question, but was retained to investigate whether questions of fact exist between the accounts of the Government and Defendants. During his investigation, Rice reviewed the police reports, the affidavit of Officer Dugan, and the video account of the traffic stop of the Pacifica and concluded that Officer Dugan's testimony contained inaccuracies. In his affidavit, Officer Dugan testified that he put Harris and Inkton in the back seat of his patrol car, activated the car's video camera, and turned the camera to face the back seat interior of the car. *See* Dugan Aff. at ¶¶ 6-8. Based on Rice's review, "the camera had been on before the subjects were placed into the backseat of the car and that it remained facing the

front of the vehicle for the entire 14 minutes that it ran." Rice Aff. ¶ 7. Based on this conclusion, Defendants contend that evidence from the video camera contradicts the Government's account of events with respect to the duration of the stop and creates a question of material fact requiring an evidentiary hearing to determine whether suppression is required.

Defendants contend that their detentions during the traffic stops and the searches of the vehicles violated their Fourth Amendment rights. Defendants argue that an evidentiary hearing on the motions to suppress is required to resolve the disputes about the timing and order of events. Specifically, Smith argues that the duration of his traffic stop was unlawfully extended without reasonable articulable suspicion of further wrongdoing. Harris argues that law enforcement agents lacked probable cause or reasonable suspicion to stop and detain the Pacifica or the Voyager, to search each vehicle, and to arrest him.

In response, the Government argues that Defendants' motions should be denied because they are unsupported by sworn statements by Defendants or another person with first-hand knowledge of the traffic stops. The Government also contends that Defendants have failed to raise a dispute of material fact as to the length of the traffic stops or as to the legality of the traffic stops and seizures.

## II. **ANALYSIS**

"A defendant who seeks to suppress evidence bears the burden of making a prima facie showing of illegality." *U.S. v. Randle*, 966 F.2d 1209, 1212 (7th Cir., 1992). In order to satisfy this burden, a proponent of a motion to suppress must show "definite, specific, detailed, and nonconjectural facts that justify relief." *Id.* "Reliance on vague, conclusory allegations is insufficient." *Id.* If an evidentiary hearing on a motion to suppress is sought, the defendant must show disputed issues of material fact as to how the evidence in question was obtained. *U.S. v. Villegas*, 388 F.3d 317, 324 (7th Cir., 2004).

After reviewing the parties' briefs, the Court has determined that Defendants have failed to show any factual dispute concerning the timing, the information known to the officers who effectuated the stops, and the officers' bases for the stops. As a preliminary matter, the Court notes that Defendants have not submitted sworn affidavits in which they adopt a time line or affidavits of a person with first-hand knowledge of the stops. Based on its own review of the evidence, the Court finds no factual issue in dispute regarding the duration of the stops or the time line of the events on March 12, 2007. The Government does not dispute that the video camera's time stamp was inaccurate during the traffic stops. Although the time stamp was incorrect, numerous other records establish the time line. These records conclusively establish that

the Voyager, driven by Smith, was stopped for speeding at 7:22 p.m. At 7:35 p.m., Officer Hornyak called for a canine unit, which arrived at the scene of the traffic stop at 7:44 p.m. With respect to the Pacifica, of which Harris was a passenger, law enforcement records show that Agent Trevino conducted the stop for speeding at 7:35 p.m. Officer Dugan was dispatched at 7:43 p.m. and arrived on the scene at 7:48 p.m.

Investigator Rice's conclusions about inconsistencies in Officer Dugan's affidavit do not establish a material issue of fact requiring an evidentiary hearing. With the exception of the time stamp in the video camera, which the Government has established was inaccurate, all of the various law enforcement records and affidavits confirm the Government's account of the time line of events on March 12, 2007. Rice's conclusions (1) that Officer Dugan turned his camera on before placing Harris and Inkton in the backseat of his patrol car, rather than turning it on after placing the subjects in the car; and (2) that the camera faced the front of the vehicle, rather than facing the subjects in the backseat, do not establish a dispute as to the time line or duration of the traffic stop, nor do they present any other question of material fact. Defendants, therefore, have failed to meet their burden of showing a disputed issue of material fact required for an evidentiary hearing. *See Villegas*, 388 F.3d at 324.

Additionally, Defendants have not raised any other issue of material fact requiring a hearing, nor have they showed that the evidence obtained during the traffic stops should be suppressed because their constitutional rights were violated.

Law enforcement agents stopped both the Voyager and the Pacifica for exceeding the posted speed limit. Probable cause for a traffic stop exists when a law enforcement officer "has an objectively reasonable basis to believe a traffic law has been violated." *See U.S. v. Dowthard*, 500 F.3d 567, 569 (7th Cir., 2007). During a traffic stop, a police officer can ask "questions unrelated to the initial purpose of the stop, provided that those questions do not unreasonably extend the amount of time that the subject is delayed." *U.S. v. Martin*, 422 F.3d 597, 601-02 (7th Cir., 2005). Information lawfully obtained during this questioning "may provide the officer with reasonable suspicion of criminal conduct that will justify prolonging the stop to permit reasonable investigation." *Id.* Whether reasonable suspicion exists depends on a consideration of the totality of the circumstances known to the officer at the time, including the officer's experiences and common sense. *U.S. v. Jackson*, 300 F.3d 740, 745-46 (7th Cir., 2002).

When the Voyager was stopped, Officer Hornyak knew that law enforcement suspected that the Voyager was transporting narcotics from Chicago to Detroit. Officer Hornyak asked Smith questions

about the purposes and length of his trip and noted that Smith appeared nervous and was providing inconsistent answers. Based on his experience, training, and knowledge, Officer Hornyak had reasonable suspicion of drug trafficking that warranted extending the duration of the traffic stop to wait for the canine unit to assist him with the stop. *See Martin*, 422 F.3d at 601-02. In all, Smith was detained for approximately twenty minutes before the canine unit arrived. This brief delay was not unreasonable based on the totality of the circumstances and the information known to Officer Hornyak at the time of the stop. *See id*. at 602 (twenty-minute delay during a traffic stop warranted for a canine unit to arrive when officer obtained conflicting statements, learned of prior arrests, and obtained that another officer believed defendant to be a drug trafficker); *U.S. v. Carpenter*, 406 F.3d 915, 916-17 (7th Cir., 2005) (five-minute delay waiting for a canine unit was a "modest incremental delay for a person already lawfully arrested cannot be called unreasonable"). The canine's alert to narcotics provided probable cause necessary for law enforcement officers to search the Voyager without a warrant. *Martin,* 422 F.3d at 602; *U.S. v. Rogers*, 387 F.3d 925, 934 n.9 (7th Cir., 2004).

Likewise, after the Pacifica was stopped lawfully for speeding, the officers' short detention and questioning of Harris and Inkton was not improper. *See Martin*, 422 F.3d at 601-02. The search of the Pacifica also met constitutional muster. Based on

the totality of the circumstances, including the officers' knowledge of prior surveillance and information from Officer Hornyak that narcotics had been discovered in the Voyager, Agent Trevino had probable cause to arrest Harris and to search the Pacifica without a warrant. *See U.S. v. Marin*, 761 F.2d 426, 430-31 (7th Cir., 1985).

### III. CONCLUSION

For the reasons stated herein, Defendants Smith and Harris have not shown the Court that significant, disputed factual issues must be resolved and warrant an evidentiary hearing. *See Martin,* 422 F.3d at 602-03; *Villegas*, 388 F.3d at 324. Defendants also have failed to meet their burden of establishing a *prima facie* case that their Fourth Amendment rights were violated during the traffic stops on March 12, 2007. *See Randle*, 966 F.2d at 1212. Therefore, Defendants' Motions to Suppress and their requests for a hearing are denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 6/4/2009